UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

CIVIL ACTION NO. 06-CV-24-KKC

BART McQUEARY,                                                                    PLAINTIFF,

v.                                        **OPINION AND ORDER**

JACK CONWAY,
*in his Official Capacity as Attorney General*
*of the Commonwealth of Kentucky,*                                   DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the parties' briefs regarding the issues of mootness and

the plaintiff's entitlement to attorney's fees.  For the following reasons, the Court finds that this

matter is moot and that the plaintiff is not entitled to attorney's fees under 42 U.S.C. § 1988.

**I.      Procedural History.**

The Plaintiff commenced this action with a complaint in which he charged that certain

provisions of  House Bill 333 (HB 333) and Senate Bill 93 (SB 93)(together, the "Act"), which

former Kentucky Governor Ernie Fletcher signed into law on March 27, 2006, infringed upon his

right to protest at funerals under the First and Fourteenth Amendments to the Constitution and were

facially unconstitutional.  (Rec. No. 1, Complaint ¶¶ 1-2, 18).

On September 26, 2006, this Court granted the Plaintiff's motion for a preliminary injunction

finding he had shown a likelihood of success on the merits of his claim that certain provisions of the

Act violated the First Amendment.  *McQueary v. Stumbo*, 453 F.Supp.2d 975 (E.D.Ky. 2006).  After

the Court's ruling on the preliminary injunction, the General Assembly amended the Act to delete

the challenged provisions and the remaining provisions of the Act were codified at KRS 525.055,

KRS 525.145 and KRS 525.155.

The issues now before the Court are whether this matter has been mooted by the Kentucky General Assembly's amendment of the Act and whether the Plaintiff is entitled to attorneys' fees as the prevailing party under 42 U.S.C. § 1988.

**A.    Current Kentucky Law.**

The provisions of the Act that were not challenged by the Plaintiff and are currently in effect prevent certain disorderly and disruptive conduct at funerals and certain conduct interfering with a funeral.

**1)    KRS 525.055 – Disorderly Conduct.**

KRS 525.055 provides that a person is guilty of disorderly conduct in the first degree when he or she:

(a)    In a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof:

    1.    Engages in fighting or in violent, tumultuous, or threatening behavior;

    2.    Makes unreasonable noise; or

    3.    Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose; and

(b)    Acts in a way described in paragraph (a) of this subsection within three hundred (300) feet of a:

    1.    Cemetery during a funeral or burial;

    2.    Funeral home during the viewing of a deceased person;

    3.    Funeral procession;

    4.    Funeral or memorial service; or

    5.    Building in which a funeral or memorial service is being conducted; and

2

(c)      Acts in a way described in paragraph (a) of this subsection at any point in time between one (1) hour prior to the commencement of an event specified in paragraph (b) of this subsection and one (1) hour following its conclusion; and

(d)      Knows that he or she is within three hundred (300) feet of an occasion described in paragraph (b) of this subsection.

**2)      KRS 525.145 – Disrupting a Funeral.**

KRS 525.145 provides that a person is guilty of disrupting meetings and processions in the

first degree when:

> with intent to prevent or disrupt a funeral or burial, funeral home viewing of a deceased person, funeral procession, or funeral or memorial service for a deceased person, he or she does any act tending to obstruct or interfere with it physically or makes any utterance, gesture, or display designed to outrage the sensibilities of the group attending the occasion.

*Id*.

**3)      KRS 525.155 – Interference with a Funeral.**

KRS 525.155 provides that a person is guilty of interference with a funeral when**:**

> at any point in time between one (1) hour prior to the commencement of an event specified in this subsection and one (1) hour following its conclusion, he or she blocks, impedes, inhibits, or in any other manner obstructs or interferes with access into or from any building or parking lot of a building in which a funeral, wake, memorial service, or burial is being conducted, or any burial plot or the parking lot of the cemetery in which a funeral, wake, memorial service, or burial is being conducted.

**B.      The Provisions Subject to this Court's Opinion and Order.**

The Plaintiff challenged only Sections 5(1)(b) and (c) of the Act. Those provisions provided

the following:

(1)      A person is guilty of interference with a funeral when he or she at any time on any day:

. . . .

(b)    Congregates, pickets, patrols, demonstrates, or enters on that portion of a public right-of-way or private property that is within three hundred (300) feet of [a funeral, wake, memorial service, or burial or any burial plot or the parking lot of the cemetery in which a funeral, wake, memorial services, or burial is being conducted]; or

(c)    Without authorization from the family of the deceased or person conducting the service, during a funeral, wake, memorial service, or burial:

   1.    Sings, chants, whistles, shouts, yells, or uses a bullhorn, auto horn, sound amplification equipment or other sounds or images observable to or within earshot of participants in the funeral, wake, memorial service, or burial; or

   2.    Distributes literature or any other item.

The Plaintiff asserted that Sections 5(1)(b) and (c) were unconstitutional prior restraints on speech and were not narrowly tailored to serve a significant government interest and did not leave open alternative channels for communication. (Rec. No. 1, Complaint ¶ 17).  He further asserted that Sections 5(1)(b) and (c) were overbroad.  (Rec. No. 1, Complaint ¶¶ 19-20, 24).  Finally, he asserted that Section 5(1)(c) unconstitutionally made speech on public property contingent upon the approval of a private party.  (Rec. No. 1, Complaint ¶ 22).

**C.    The Plaintiff's Proposed Communications.**

In his Complaint, the Plaintiff asserted that he had picketed funerals with the Westboro Baptist Church three times in Kentucky. (Rec. No. 1, Complaint ¶ 10).  He stated that such protests are an effective way to convey the church's message. (Rec. No. 1, Complaint ¶ 11).  He stated he waned to protest at future funerals but feared he would be prosecuted for violating Sections 5 (1)(b)

4

and (c) of the Act. (Rec. No. 1, Complaint ¶ 12).

The Plaintiff stated that he wished to congregate, picket, or demonstrate on that portion of a public right-of-way that is within 300 feet of a funeral, wake, memorial service or burial[1] in a manner that does not, and is not intended to disrupt the event.  (Rec. No. 1, Complaint ¶ 13).

The Plaintiff further stated he wished to make sounds and display images observable to or within earshot of funeral participants, in a manner that does not, and is not intended to, disrupt the funeral. The Plaintiff wished to make these sounds and display these images without seeking or obtaining authorization from the family of the deceased or person conducting the funeral. (Rec. No. 1, Complaint ¶ 14). The Plaintiff stated that he also wished to distribute literature in a non-disruptive manner without first obtaining the permission of the family of the deceased or person conducting the funeral.  (Rec. No. 1, Complaint ¶ 15).

**D.     The Preliminary Injunction.**

The Plaintiff moved for a preliminary injunction (Rec. No. 2) enjoining the Attorney General from enforcing Sections 5(1)(b) and (c).  This Court granted the motion, finding that the provisions were content-neutral and, thus, were required to be narrowly tailored to serve a significant government interest and to leave open ample alternative channels of communication.

The Court assumed, for purposes of the preliminary injunction motion, that the state had a significant interest in protecting funeral attendees from unwanted communications that are so obtrusive that they are impractical to avoid.  However, the Court determined that the Plaintiff had established a likelihood of success on the merits of his claim that  Sections 5(1)(b) and (c) burdened

---

[1] Throughout this Opinion, the Court will refer to all of the events covered by Sections 5(1)(b) and (c) – funerals, wakes, memorial services and burials – simply as "funerals."

5

substantially more speech than necessary to prevent interference with a funeral or to protect funeral

attendees from unwanted, obtrusive communications that are otherwise impractical to avoid.

The Court's reasoning is important to the current motion for attorney's fees and, thus, below

is a lengthy excerpt from the Opinion:

> Section 5(1)(b) prohibits all congregating, picketing, patrolling, demonstrating or entering on property within 300 feet of a funeral whether such activities interfere with the funeral or not and whether such activities are authorized by funeral attendees or not. It prohibits such activity whether the persons involved in the activities are visible to funeral participants or not and whether they are making any sound that funeral participants can hear or not. Thus, in addition to prohibiting intrusive activities, Section 5(1)(b), prohibits activity that would not interfere with a funeral and prohibits communications that are neither necessarily unwanted nor so obtrusive that they cannot be avoided by the funeral attendees.
>
> Further, the 300-foot buffer zone is substantially larger than the 36-foot buffer zone upheld in *Madsen*, the 8-foot floating buffer zone upheld in *Hill* and the single-resident zone upheld in *Frisby*. The 300-foot zone would encompass public sidewalks and streets and would restrict private property owners' speech on their own property. The zone is large enough that it would restrict communications intended for the general public on a matter completely unrelated to the funeral as well as messages targeted at funeral participants.
>
> Likewise Section 5(1)(c)(1) prohibits all unauthorized sounds or images observable to or within earshot of funeral participants whether such sounds or images are capable of interfering with the funeral or not.  Instead of prohibiting "unreasonable" or "interfering" sounds or images, the provision contains a blanket prohibition against any person making any image or sound perceptible to funeral attendees. Such a prohibition is substantially broader than necessary to prohibit interference with a funeral.
>
> . . . Sounds that are simply "within earshot" of funeral attendees will not necessarily interfere with a funeral.  Likewise, sounds that are simply "within earshot" of funeral attendees are not necessarily so obtrusive as to be impractical to avoid.
>
> The "images observable" provision of Section 5(1)(c)(1) also burdens substantially more speech than necessary to prohibit interference with a funeral or to protect citizens from obtrusive, unavoidable images. Unlike sounds, images that are simply "observable" may be avoided by averting the eyes or, when the potential observers are indoors, by pulling the curtains.
>
> Read literally, Section 5(1)(c)(2) prohibits all unauthorized distribution of literature occurring anywhere during any funeral.  With no geographic restriction, this provision clearly burdens more speech than necessary.  Further, even if the provision

is read to prohibit only the distribution of literature where such distribution is observable to or within earshot of funeral participants, the provision burdens substantially more speech than necessary to prevent interference with the funeral or to protect citizens from unwanted, obtrusive communications.

Moreover, the Court cannot construe the provisions as prohibiting only sounds or images that are "unreasonable," "outrageous," "disruptive," or "threatening," or that "tend to obstruct or interfere with" a funeral. Such sounds and images are already prevented in other sections of the Act that are not challenged in this action. Section One of the Act prohibits, within 300 feet of a funeral "fighting," "violent, tumultuous or threatening behavior," "unreasonable noise" and the creation of "a hazardous or physically offensive condition." Section Three of the Act prohibits any person from doing any act "tending to obstruct or interfere with" a funeral and prohibits any person from making "any utterance, gesture, or display designed to outrage the sensibilities of the group attending the occasion" when such acts are done with the intent to disrupt a funeral. Section 5(1)(a) of the Act prohibits anyone from blocking, impeding, inhibiting or in any other manner obstructing or interfering with access into or from any building or parking lot of a building or cemetery where a funeral is being conducted.

It is not reasonable to construe Sections 5(1)(b) and (c) as prohibiting precisely the same kinds of activities that are already prohibited by other sections of the Act. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' " *TRW Inc. v. Andrews,* 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker,* 533 U.S. 167, 174 (2001)). Unless Section 5(1)(b) and (c) are superfluous, they must be intended to restrict sounds that are less obtrusive and disruptive than the "unreasonable noise" already prohibited in Section One. Likewise, Section 5(1)(b) and (c) must be intended to restrict sounds and images that are less obtrusive and disruptive than those "designed to outrage the sensibilities" of funeral participants already prohibited in Section Three. Likewise, Section 5(1)(b) and (c) must be aimed at communications that are less obtrusive and disruptive than the acts that tend to obstruct or interfere with a funeral that are already prohibited by Section Three of the Act and the acts that would obstruct or interfere with ingress to and egress from a funeral prohibited by Section 5(1)(a) of the Act.

*McQueary*, 453 F.Supp.2d at 996-97.

### E.   Current Issues.

After the Court's order granting preliminary injunction, by Agreed Order (DE 41), the parties

agreed to brief two issues. The first issue is whether this case is now moot given that the General

Assembly amended the Act to delete the provisions that were subject to the preliminary injunction. The second issue is whether the Plaintiff is a "prevailing party" entitled to attorneys' fees and costs under 42 U.S.C. § 1988.

## II.    ANALYSIS.

### A.    Mootness.

"Article III of the Constitution confines the power of the federal courts to adjudication of 'cases' or 'controversies.'" *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997) (citing U.S. Const. art. III, § 2; *Allen v. Wright*, 468 U.S. 737, 750 (1984). "The mootness doctrine, a subset of the Article III justiciability requirements, demands a live case-or-controversy when a federal court decides a case." *Id*.

In *Kentucky Right to Life*, the Sixth Circuit addressed mootness in a case in which, like this one, the Kentucky General Assembly amended the act at issue while litigation regarding the constitutionality of the act was pending. *Id*. at 639. As here, the state argued that the statutory amendments mooted various claims brought by the plaintiff. *Id*. at 644.  The plaintiffs argued, as they also argue here, that the claims were not moot "because the Kentucky General Assembly remains free to reenact the prior statutory scheme." *Id*. The Sixth Circuit stated that "[l]egislative repeal or amendment of a challenged statute while a case is pending on appeal usually eliminates [the] requisite case-or-controversy because a statute must be analyzed by the appellate court in its present form." *Id*. The Court determined that the Plaintiff's challenges to several of the statutory provisions were moot because of the statutory amendments. *Id.*

In doing so, the Sixth Circuit distinguished *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982).  In that case, the district court declared that certain language in a city ordinance was

8

unconstitutionally vague. *Id.* at 287-88. While the matter was pending on appeal before the Fifth Circuit, the city revised the ordinance to delete the language at issue. *Id.* at 288. The Supreme Court determined that the case was not moot because "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated." *Id.* at 289.

However, the Sixth Circuit noted in *Kentucky Right to Life*, that, "[c]ritical to the [Supreme] Court's decision [in *Aladdin's Castle*]. . . was the City's announced intention to reenact the unconstitutional ordinance if the case was dismissed as moot." *Kentucky Right to Life*, 108 F.3d at 645. The Sixth Circuit found this to be an "essential fact, which created the case-or-controversy before the Supreme Court in *Aladdin's Castle*." *Id.*; *see also Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004)("[c]ritical to the holding in [*Alladin's Castle*], however, was the fact that legislators had publicly expressed an intention to re-enact the offending legislation").

The Plaintiff argues that this Court should not follow *Kentucky Right to Life* because it is no longer good law in light of *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167 (2000). (DE 43, Pf.'s Brief at 8 n.7; DE 44 Pf.'s Response at 3). In that case, the Supreme Court held that a citizen suitor's claim for civil penalties under the Clean Water Act did not necessarily become moot when, after the litigation commenced, the defendant came into compliance with its permit which imposed limitations on the defendant's discharge of pollutants. *Id.* at 173-74.

The Court noted that, "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Id.* at 189 (quoting *Aladdin's Castle, Inc.*, 455 U.S. at 289). This is because, if a defendant can moot an action by voluntarily ceasing the practice in question after litigation has

9

begun, then the defendant is "free to return to his old ways." *Id*.

The Court stated that, to prevent that from happening, a case can become moot by a defendant's voluntary conduct if "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id*. (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199,203 (1968). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id*. (international quotations and brackets and citation omitted).

The Plaintiff argues that *Friends of the Earth* has implicitly overturned *Kentucky Right to Life*.  However, in *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830 (6th Cir. 2004), a case decided after *Friends of the Earth*, the Sixth Circuit determined that the plaintiff's claim for declaratory and injunctive relief was moot, citing *Kentucky Right to Life*. *Id*. at 835-36. In that case, the plaintiff asserted that the city's zoning ordinance was unconstitutional.  After the plaintiff filed the action, the city amended the ordinance.  *Id*. at 833.

The Sixth Circuit noted that the plaintiff asked the court to declare the zoning ordinance unconstitutional and to prevent the city from enforcing it.  *Id*.at 836.   The court determined these claims were moot because the court could "neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect." *Id.*  As to the plaintiff's claim for money damages, however, the court determined that claim was not moot because, despite the amendment, the plaintiff could seek damages for any losses caused by the enforcement of the challenged ordinance.  *Id.*

*Brandywine* makes clear that *Kentucky Right to Life* remains good law after *Friends of the*

10

*Earth.*[2]

Furthermore, *Friends of the Earth* is distinguishable from this case in that the defendant in that case was a private party who was charged with not complying with the terms of its permit governing the amount of treated water the defendant could discharge into a nearby waterway. *Friends of the Earth*, 528 U.S. at 175-177.   The issue was whether the case became moot by the actions of the private party to bring itself into compliance with the law or whether there was a reasonable expectation that the private party would return to its "old ways."  *Id*. at 189.

The defendant in this case, however, like that in *Kentucky Right to Life*, is a government official and the issue, like that in *Kentucky Right to Life*,  is whether the case has become moot by the Kentucky General Assembly's amendment of a statute.

The Sixth Circuit has noted that "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties. . . such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine."  *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990)(quoting *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988)). *See also Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003); *Fed. of Adver. Indus. Representatives v. Chicago*, 326 F.3d 924, 929 (7th Cir.2003)(*Friends of the Earth* standard "is the appropriate standard for cases between private parties, but this is not the view we have taken toward acts of voluntary cessation by government officials . . . we place a greater stock in their acts of self-correction, so long as they appear genuine."); *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 18 (1st Cir.2002)("[u]nder circuit precedent. . .the *City of Mesquite* exception applies 'only where there is

---

[2] The Plaintiff also argues that the Court should not follow *Kentucky Right to Life* because its "rationale is flawed."  (DE 44, Pf.'s Response at 7).  However, because neither the Sixth Circuit Court of Appeals nor the Supreme Court has overruled *Kentucky Right to Life*, this district court must follow it.

a reasonable expectation that the challenged conduct will be repeated following dismissal of the case.'"); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir.2000) ("we are convinced that *Mesquite* is generally limited to the circumstance. . .in which a defendant openly announced an intention to reenact 'precisely the same provision' held unconstitutional below."); *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir.2000)("the repeal of a challenged statute is one of those events that makes it 'absolutely clear that the allegedly wrongful behavior. . .could not reasonably be expected to recur."); *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir.1994)(same).

In support of his argument that this case is not moot, the Plaintiff cites *Ammex, Inc. v. Cox*, 351 F.3d 697 (6th Cir. 2003).  In that case, the state Attorney General issued a Notice of Intended Action ("NIA") to the plaintiff stating that the Attorney General may file an enforcement action against the plaintiff under the state Consumer Protection Act unless the plaintiff ceased certain advertising activity.  *Id*. at 700-01.  The plaintiff filed suit, asserting that the state statute was unconstitutional and preempted by federal law. *Id*. at 701. While the case was pending before the district court, the Attorney General withdrew the NIA stating that it would not issue a new NIA unless certain "changed circumstances occurred."  *Id* at 702.  The district court then dismissed the action as moot.  *Id*.

In determining whether the case was moot, the Sixth Circuit noted that the Attorney General's withdrawal of the NIA "acknowledges that related litigation is ongoing and might reasonably be expected to lead to the 'changed circumstances'" which would cause a new NIA to be issued. *Id*. at 705. The Sixth Circuit determined that, because the withdrawal did not make it "absolutely clear that the enforcement action is not reasonably likely to recur," the case was not

12

moot.  *Id.* at 705-06.

In this case, however, there is no indication that the Kentucky General Assembly will reenact the deleted provisions of the Act after this case is dismissed.  The Plaintiff argues that the fact that the Act passed with overwhelming support in both houses combined with the popular opposition to the WBC's funeral protests make it likely that the General Assembly will reenact Sections 5(1)(b) and (c).  The Plaintiff also argues that the fact that the Attorney General has made the argument that the provisions were "necessary" is evidence that the Kentucky General Assembly will reenact them.  However, these facts do not raise the likelihood of the reenactment of the provisions above mere speculation, at best.  There is simply no reason to question the genuineness of the Kentucky General Assembly's amendment of the Act.

The Plaintiff also cites *Cam I, Inc. v. Louisville/Jefferson County Metro Govt.*, 460 F.3d 717 (6th Cir. 2006).  However, in that case, the defendant local government amended the local ordinance in a way that "did not completely remove the alleged harm."  *Id.* at 720.  Thus, the Sixth Circuit found the amendment did not moot the case because "where the changes in the law arguably do not remove the harm or threatened harm underlying the dispute, the case remains alive and suitable for judicial determination."  *Id.* (internal quotations and citation omitted).  In this case, the Plaintiff only challenged two provisions of the Act and the amendment to the Act entirely omitted those two provisions.

The Plaintiff also cites *Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2004).  At issue in that case were certain regulations promulgated by the Michigan Department of Corrections ("MDOC") that were repealed while the case was pending.  The Sixth Circuit held that the repeal did not moot the case for two reasons.  First, promulgation of the rules was "solely within the discretion of the

13

MDOC." *Id*. at 1035.  Thus, the court determined "there is no guarantee that MDOC will not change back to its older, stricter Rule as soon as this action terminates." *Id*.  Second, and more importantly, the plaintiff in that case had asserted claims for money damages and the purging of their disciplinary records. *Id*.

This case differs from *Akers* in that reenactment of Sections 5(1)(b) and (c) is not solely within the discretion of one government agency.  Instead, it would require action by two houses of the General Assembly, neither of which has indicated a desire to do so.  More importantly, however, in this case, the Plaintiff does not seek monetary damages.  Instead, he only asked this Court to declare unconstitutional Sections 5(1)(b) and (c) of the Act and to enjoin the state from enforcing them.  Because those provisions no longer exist, this case will be dismissed as moot.

### B.    Attorneys' Fees.

The next issue is whether the Plaintiff is entitled to attorneys' fees under 42 U.S.C. § 1988. That statute provides that, in any action to enforce 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party. . . a reasonable attorney's fees as part of the costs. . . ." 42 U.S.C. § 1988(b).  A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)(quoting S. Rep. No. 94-1011, p. 4 (1976)). "[T]he fee applicant bears the burden of establishing entitlement to an award. . . ." *Id*. at 437.

Plaintiffs are "'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Hensley*, 461 U.S. at 433. "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between

the parties. . . in a way that directly benefits the plaintiffs." *Id.*

"Even a prevailing party may not be entitled to attorneys' fees if 'special circumstances would render such an award unjust.'" *Deja Vu v. Metropolitan Government of Nashville*, 421 F.3d 417, 422 (6th Cir. 2005)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). "But little guidance has been provided by the Supreme Court as to precisely what constitutes a special circumstance that would defeat a fee award, and we have recently opted for a case-by-case approach rather than adopting a 'predetermined formula.'" *Id.* "In that case-by-case inquiry, the burden is on the non-prevailing party to make a strong showing that 'special circumstances warrant a denial of fees.'" *Id.* (quoting *Morscott, Inc. v. City of Cleveland*, 936 F.2d 271, 273 (6th Cir.1991).

In *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598 (2001), the Supreme Court held that a plaintiff is not a "prevailing party" where his lawsuit caused a voluntary change in the defendant's conduct  if he does not also secure a judgment on the merits or a court-ordered consent decree. *Id.* at 600.

 In that case, after the plaintiff filed suit charging that certain provisions of West Virginia state law violated federal law, the state legislature enacted two bills which eliminated the challenged provisions. *Id.* at 601. In holding that the plaintiff was not a "prevailing party," the Supreme Court rejected the "catalyst theory," pursuant to which the plaintiff is deemed a prevailing party if he "achieves the desired result because the lawsuit caused a voluntary change in the defendant's conduct." *Id.*  The Court determined that the catalyst theory was incorrect because it permitted attorney's fees "where there is no judicially sanctioned change in the legal relationship of the parties." *Id.* at 605.

Later, in *Sole v. Wyner*, 127 S.Ct. 2188 (2007), the Court determined that a plaintiff who

15

obtains a preliminary injunction after an abbreviated hearing is not entitled to attorney's fees where the court later denies a permanent injunction after a dispositive adjudication on the merits. *Id*. at 2191. The Court held that "[a] plaintiff who achieves a transient victory at the threshold of an action can gain no award under that fee-shifting provision if, at the end of the litigation, her initial success is undone and she leaves the courthouse emptyhanded." *Id*. at 2192. The Court noted that the fact that the eventual ruling on the merits superseded the preliminary ruling was "[o]f controlling importance." *Id*. at 2195-96. The Court expressly stated that it was not addressing whether a plaintiff may *sometimes* be entitled to attorney's fees where he obtains a preliminary injunction and there is no final decision on the merits against him. *Id*. at 2196.

This case is different from *Buckhannon* in that the Plaintiff in this case obtained a preliminary injunction prior to the defendant's voluntary cessation of the conduct. And this case is different from *Sole* in that the preliminary injunction was not dissolved before the case became moot. The Court has been unable to locate any Sixth Circuit cases in which the plaintiff was awarded attorney's fees where he obtained only a preliminary injunction before the case was dismissed as moot and the parties have cited no such cases.

The Plaintiff relies on *Duboc v. Green Oak Tp.*, 312 F.3d 736 (6th Cir. 2002). However, in that case, the Sixth Circuit denied the plaintiff's motion for attorney's fees, holding that a plaintiff who obtains a preliminary injunction can only be considered a "prevailing party" if the injunction "represents an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff." *Id*. at 753 (6th Cir. 2002) (quoting *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988)).

In that case, the plaintiff charged that the defendant township and its officials had violated

16

his First Amendment rights by retaliating against him for filing lawsuits with regard to certain "certificates of occupancy" he had unsuccessfully petitioned the township to issue to him. *Id*. at 742, 747.

The district court granted the plaintiff an injunction, ordering the township to issue the certificates of occupancy subject to the plaintiff's compliance with certain conditions. *Id*. at 742. However, the district court later dissolved the injunction and dismissed the plaintiff's complaint. *Id*. at 742-43. The plaintiff sought interim attorney's fees based on the preliminary injunction. *Id*. at 753. Had *Sole* already been decided, the plaintiff in *Duboc* would clearly not have been entitled to attorney's fees.

But, the district court did not have the benefit of *Sole*. Instead, it found that the plaintiff was not entitled to attorney's fees because the injunction was "procedural" and not "an unambiguous indication of probable success on the merits." *Id*. The Sixth Circuit agreed, noting that the injunction was specifically called "temporary, and was only issued subject to [the plaintiff] complying with seven conditions." *Id*. at 754. Further, the Sixth Circuit noted that the plaintiff's goal with the lawsuit "was not to obtain a temporary certificate of occupancy, which the injunction provided, but to seek damages for alleged violations of [the plaintiff's] constitutional rights." *Id*.

Thus, while the court in *Duboc* denied attorney's fees, it also indicated that obtaining a preliminary injunction could, at least in some cases, confer "prevailing party" status on a plaintiff. The Court finds that the preliminary injunction in this case, however, does not render the plaintiff a "prevailing party" for purposes of 42 U.S.C. § 1988.

This case differs from the cases in other circuits relied on by the Plaintiff in which the court found that obtaining a preliminary injunction rendered the plaintiff a "prevailing party." In those

17

cases, the preliminary injunction unambiguously altered the legal relationship between the parties just as a final judgment does because it "directly benefitt[ed] the plaintiffs." *Farrar*, 506 U.S. at 109. *See*, *People Against Police Violence v. City of Pittsburgh (PAPV)*, 520 F.3d 226, 229-230 (3d Cir. 2008)(plaintiffs who unsuccessfully requested parade permit under city ordinance obtain preliminary injunction prohibiting city from enforcing ordinance); *Watson v. County of Riverside*, 300 F.3d 1092, 1094 (9th Cir. 2002)(plaintiff who was subject of termination hearing obtains preliminary injunction prohibiting county from using incident report in termination hearing); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 940 (C.A.D.C. 2005)(milk producers who would have been subject to an immediate loss of $5,000,000 if new price for Class III butterfat had taken effect obtain preliminary injunction enjoining government from imposing new price).

The preliminary injunction entered in this case, however, did not directly benefit the Plaintiff. In granting the injunction, the Court found that the challenged provisions were likely unconstitutional because they were overbroad. In other words, the Court found that the challenged provisions were constitutionally problematic because they prohibited substantially more communications than those proposed by the Plaintiff. The Court assumed for purposes of the preliminary injunction opinion that the state has an interest in protecting funeral attendees from unwanted communications that are so obtrusive that they are impractical to avoid. But the Court determined that the challenged provisions prohibited substantially more speech than was necessary to protect funeral attendees from such unwanted communications.

The preliminary injunction did not, however, amount to a ruling that the plaintiff was entitled to engage in the communications that he proposed in his Complaint. In fact, it appears that current Kentucky law – which the Plaintiff never challenged – would likely prohibit the activity in which

the Plaintiff proposed to engage.  The Plaintiff proposed to "congregate, picket, or demonstrate" within 300 feet of a funeral,  to make sounds and display images observable or within earshot of funeral participants and to distribute literature near a funeral.  The Plaintiff explains that these activities would be conducted as part of a "campaign against homosexuality" and the proposed communications are controversial and offensive and target the funerals of military personnel.  (DE 43, Pf.'s Brief at 5, 7).

The Court's ruling does not mean that the Plaintiff can conduct these activities.  The Plaintiff is unambiguously prohibited under current Kentucky law from engaging in tumultuous behavior, making unreasonable noise, and creating a "physically offensive" condition at a funeral.  He is also prohibited from making "any utterance, gesture, or display designed to outrage the sensibilities of the group" attending the funeral, if such acts are done with intent to prevent or disrupt the funeral.  The Plaintiff has not even challenged these provisions of the Act.[3]

For these reasons,  the Court finds that the preliminary injunction in this particular case does not render the Plaintiff a prevailing party under 42 U.S.C. § 1988.

Moreover, even if he were to be considered a "prevailing party" under 42 U.S.C. § 1988, the special circumstances described above warrant the denial of attorney's fees in this action.  While the Plaintiff may have obtained a preliminary injunction, the injunction did not directly benefit him.  Further, current Kentucky law that was in force throughout this litigation and never challenged by the Plaintiff would appear to likely prohibit much of the communications proposed by the Plaintiff.

---

[3]  While Plaintiff professes in his Complaint that he has no subjective intent to disrupt the funeral with his activities, his liability for his proposed communications does not depend upon his subjective intent. *See, e.g., Little v. Commonwealth*, 272 S.W.3d 180, 186  (Ky. 2008) (intent can be inferred from a defendant's conduct).

19

For all these reasons, the Plaintiff should not be awarded attorney's fees.

Dated this 26th day of June, 2009.

Signed By:

**_Karen K. Caldwell_**

**United States District Judge**

20